WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| United States of America, | No. CV-12-01546-PHX-JAT |
|---|---|
| Plaintiff, | **ORDER** |
| v. | |
| $14,000 in United States currency, $40,000 in United States currency, | |
| Defendants. | |

Pending before the Court is Plaintiff United States of America's ("the Government") Motion for Summary Judgment (Doc. 24). The Court now rules on the motion.

**I.    Background**

The Government has filed this civil forfeiture action in rem pursuant to 21 U.S.C. § 881(a)(6) to forfeit to its possession a total of $54,000 in United States currency. (Doc. 1 at 1). Claimant Danny Murray claims an interest in the seized currency. (Doc. 10).

The facts concerning the seizure are undisputed.[1] In February 2012, Danny Murray and Jose Lopez traveled from Newark, New Jersey to Phoenix, Arizona with a final destination of Burbank, California. The pair traveled on round-trip airline tickets that Murray had purchased with his credit card three days earlier, at a cost of approximately $1,500. Murray and Lopez were scheduled to return to Newark three days later. Neither of them carried checked baggage but both had carry-on bags. Officers with

---

[1] Accordingly, the Court will not cite to the statement of facts.

the Phoenix Police Department approached the pair and questioned them about their travel. Both Murray and Lopez consented to searches of their bags. Murray told the officers that Lopez was carrying money that belonged to Murray. Murray's bag contained $40,000 in U.S. currency inside a dark-colored sock; Lopez's bag contained $14,000 in U.S. currency in bundles of $5,000, $5,000, and $4,000.[2]

When the officers asked Murray how much money he was carrying between the money on his person and on Lopez's person, Murray replied "[a]bout, I don't know, like 50." Murray asked the officers to include his name on the receipt for the money found in Lopez's possession. Murray stated that he did not know how much money he had given to Lopez to carry, but later testified at his deposition that during his and Lopez's car ride to the airport, he had taken two stacks of currency from his bag and gave them to Lopez. At his deposition, Murray also stated that he arranged on the same day of the trip for Lopez to carry the money and had not discussed this arrangement with Lopez during any of their earlier conversations about the trip.

Murray told the officers that he was going to use the money in his possession to purchase a video camera. When the officers asked Murray if he was an independent film maker, Murray replied that he was "breaking into the business." Murray used his cell phone to show the officers the $38,000 camera package that he wanted to purchase from a website called "Red Cinema." The officers asked Murray how he had earned the money, and Murray replied that he had saved it from working in his construction business, D. Murray Construction, which he had owned since 2005.

The officers searched Murray's cell phone and discovered two photographs, one of which appeared to show a bag containing a white powder; the other photo appeared to show numerous bags containing white powder. The white powder in both photos had an appearance consistent with that of cocaine. Murray identified the photos as having been sent to him by a person identified as "J." Murray denied dealing drugs. The police then

---

[2] The $40,000 consisted of 287 $100 bills, 134 $50 bills, and 230 $20 bills; the $14,000 consisted of 699 $20 bills and four $5 bills.

used a certified narcotics detector dog to examine the currency; the dog alerted to the $14,000 in currency that had been in Lopez's possession but not to the $40,000 that had been in Murray's possession.

Murray testified at his deposition that his construction business was a sole proprietorship and that he usually earned between $150 and $600 per job. He also testified $18,000 of the money had been loaned to him by three different individuals; the remaining $36,000 he had saved over five to six years. Murray testified that he had previously paid a $3,100 deposit to the camera company and despite the seizure, he ultimately purchased the camera in October or November 2012 for $58,000.

Murray testified that he had filed tax returns reporting $23,355 of income in 2009, $18,800 in 2010, and $53,000 or $60,000 in 2011. He also testified that he is the sole provider for his five children, his wife, and the mother of one of his children. The Government conducted an employment history search in forty-nine states for Murray's social security number and could find no record of employment. Murray's bank account records reflect ATM cash deposits totaling $19,025 during the month of December 2011 and $21,062 during the month of January 2012. These deposits were generally made in amounts between $150 and $1000 and there were often multiple deposits in a single day.

Murray's bank account statement shows two debit card purchases on December 20, 2011 for "Red Com And Red Digi" in the amounts of $150 and $3,100.

Murray has also admitted to having previously been convicted of possession of cocaine with intent to distribute.

**II.    Legal Standard**

**A.    Summary Judgment**

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). "A party asserting that a fact cannot be or is genuinely disputed must support that assertion by . . . citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits, or

declarations, stipulations . . . admissions, interrogatory answers, or other materials," or by "showing that materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." *Id.* 56(c)(1)(A), (B). Thus, summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

Initially, the movant bears the burden of pointing out to the Court the basis for the motion and the elements of the causes of action upon which the non-movant will be unable to establish a genuine issue of material fact. *Id.* at 323. The burden then shifts to the non-movant to establish the existence of material fact. *Id.* The non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts" by "com[ing] forward with 'specific facts showing that there is a *genuine* issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986) (quoting Fed.R.Civ.P. 56(e) (1963) (amended 2010)). A dispute about a fact is "genuine" if the evidence is "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The non-movant's bare assertions, standing alone, are insufficient to create a material issue of fact and defeat a motion for summary judgment. *Id.* at 247–48. However, in the summary judgment context, the Court construes all disputed facts in the light most favorable to the non-moving party, *Ellison v. Robertson*, 357 F.3d 1072, 1075 (9th Cir. 2004).

**B.    Civil Forfeiture**

21 U.S.C. § 881(a)(6) provides that all currency "furnished or intended to be furnished by any person in exchange for a controlled substance" or was "proceeds traceable to such an exchange" or was "used or intended to be used to facilitate" a violation of the Controlled Substances Act, 21 U.S.C. §§ 801 to 971 is subject to forfeiture to the United States.

In an action for civil forfeiture, the government bears the burden of establishing by

1 a preponderance of the evidence that the property is subject to forfeiture. 18 U.S.C. §
2 983(c)(1). "[I]f the [g]overnment's theory of forfeiture is that the property was used to
3 commit or facilitate the commission of a criminal offense, or was involved in the
4 commission of a criminal offense," the government must establish a "substantial
5 connection" between the property and the offense." *Id.* § 983(c)(3); *see also United*
6 *States v. One 1986 Ford Pickup*, 56 F.3d 1181, 1187 (9th Cir. 1995). The Court looks to
7 the totality of the circumstances, including circumstantial facts, in determining whether
8 the government has met its burden of proving that property is subject to forfeiture. *See*
9 *United States v. Currency, U.S. $42,500.00*, 283 F.3d 977, 980 (9th Cir. 2002).
10       Once the government has met its burden of proving that property is subject to
11 forfeiture, a claimant may defeat forfeiture by showing by a preponderance of the
12 evidence that "the property was not involved in a violation of the narcotics laws[] or [by]
13 otherwise refut[ing] the government's showing." *United States v. $215,300 U.S.*
14 *Currency*, 882 F.2d 417, 419 (9th Cir. 1989)

15 **III.   Analysis**

16       The Government argues that the totality of the circumstances shows that the
17 currency in question was substantially connected to drug trafficking. (Doc. 24 at 4).
18 These circumstances include Murray's travel plans, the method and quantity of currency
19 transported, the alleged source of the currency, and Murray's prior criminal history.

20       **1.   Travel Plans**

21       The Government contends Murray's travel plans were inconsistent with his
22 professed purpose of his trip because Murray purchased the round-trip tickets just three
23 days before departure, Murray asked Lopez on the day of the trip to carry some of the
24 currency, and Lopez's accompaniment was unnecessary if Murray was merely
25 purchasing a video camera. (*Id.*)

26       A claimant's travel schedule and arrangements are probative in determining
27 whether currency seized from the claimant while traveling is substantially connected to
28 illegal activity. *See United States v. Funds in Amount of Thirty Thousand Six Hundred*

*Seventy Dollars*, 403 F.3d 448, 467 (7th Cir. 2005) (purchasing airplane tickets soon before departure is one factor consistent with the travel plans of drug couriers). Murray contends, however, that his purchase of the tickets under his own name and using a credit card shows that he was not attempting to conceal a crime, and therefore, was not involved in any drug trafficking. (Doc. 26 at 4). At least one court has held that traveling in one's own name and purchasing airplane tickets with one's own credit card instead of cash reduces the suspiciousness of travel arrangements. *See United States v. $67,220.00 in U.S. Currency*, 957 F.2d 280, 285 (6th Cir. 1992).

Nonetheless, Murray fails to explain why he paid for Lopez's ticket or why he waited until the car ride to the departure airport to ask Lopez to carry $14,000 in currency, and on its face it seems strange that Murray would give Lopez currency to carry during the trip only for Lopez to give that currency back to Murray before Murray purchased the camera. But the Government has the burden of proving that there exists no genuine issue of material fact concerning the currency's substantial connection to a controlled substance, and the Court draws all inferences in the light most favorable to claimant. *See Ellison*, 357 F.3d at 1075. The undisputed facts show that Murray had previously paid a $3,250 deposit for the video camera and in fact eventually purchased the camera; these facts corroborate Murray's story.

### 2. The Quantity, Packaging, and Concealment of the Currency

The Government next argues that the quantity of currency and the method by which Murray concealed it in his luggage suggests it was substantially connected to illicit activities. (Doc. 24 at 5). "[P]ossession of a large amount of cash is 'strong evidence that the money was furnished or intended to be furnished in return for drugs.'" *$42,500*, 283 at 981 (quoting *United States v. $93,685.61 in U.S. Currency*, 730 F.2d 571, 572, (9th Cir. 1984)). However, possession alone is insufficient to establish a substantial connection to illegal drug activity. *See id.* at 981.

More significant is the fact that Murray and Lopez hid the currency inside their carry-on bags. "A common sense reality of everyday life is that legitimate businesses do

not transport large quantities of cash rubber-banded into bundles and stuffed into packages in a backpack." *United States v. $242,484.00*, 389 F.3d 1149, 1161 (11th Cir. 2004). In this case, the currency was bundled and stuffed into Murray's sock, which is not a typical location for a legitimate business to store currency for transport. Moreover, the denomination of the bills is further evidence that the currency was connected to drug trafficking. To the extent that legitimate businesses have an interest in transporting large quantities of currency, it is reasonable that they would convert smaller denomination bills into larger ones. *See id.* Drug traffickers cannot avail themselves of this convenience because of the currency transaction reports that a bank would generate. *Id.*

Here, more than half of the bills comprising the $40,000 were $50 or smaller, and the $14,000 was almost entirely comprised of $20 bills. Murray offers no explanation for why he divided the currency and gave part to Lopez to carry separately. But Murray alleges that he saved the money to purchase a video camera and the Government offers no evidence that Murray's story is not credible as a matter of law. Even if the quantity, composition, and concealment of the currency supported a conclusion that the currency was substantially connected to illicit activity, illicit activity does not necessarily equate to drug trafficking.

### 3. Alleged Source of the Funds

Murray claims that he earned the bulk of the seized money from working in his construction business. The Government argues that this implausible explanation further weighs in favor of forfeiture. (Doc. 24 at 6). When a claimant's legitimate income is insufficient to explain the amount of currency found in his possession, it supports a showing of forfeiture. *See United States v. $174,206.00 in U.S. Currency*, 320 F.3d 658, 662 (6th Cir. 2003) (finding a total of $31,142 in income over a five-year period insufficient to explain $174,206 in currency). "The mere allegation of a highly unlikely legitimate source of income without some support to give the allegation credibility cannot constitute an issue of material fact defeating summary judgment for forfeiture." *United States v. Two Parcels of Real Prop. Located in Russell Cnty., Ala.*, 92 F.3d 1123, 1129

(11th Cir. 1996).

Here, Murray's total reported income for 2009-2011 was $102,155, assuming the higher of Murray's two estimates for his 2011 income. It is possible that Murray saved the seized currency from these earnings despite supporting himself, his five children, his wife, and the mother of one of his children. On the other hand, although Murray originally told officers that he had saved the money from his business, he testified at his deposition that $18,000 of it had been a loan. Inconsistent statements concerning the source of the currency are probative of illegal activity. *See United States v. $22,474.00 in U.S. Currency*, 246 F.3d 1212, 1217 (9th Cir. 2001) ("inconsistent statements about the money and [the claimant's] reasons for being in Phoenix tended to support an inference that the money was drug-related"); *United States v. $252,300.00 in U.S. Currency*, 484 F.3d 1271, 1274 (10th Cir. 2007). But there are no facts linking any inconsistency in Murray's story to proof that the money was linked to illicit drugs.

On the other hand, Murray's bank records show a plethora of small ATM cash deposits to his account, which may be indicative of money laundering. *See United States v. $105,180 in U.S. Currency*, 2013 WL 2153326, at *10 (D. Ariz. May 17, 2013). But Murray alleges that his construction business earns $150 to $600 per job, which is consistent with these deposits. The Court cannot weigh the evidence at the summary judgment stage and declare Murray to be not credible; Murray's explanation creates an issue of fact as to whether he saved most of the money from his construction job.

### 4. Positive Canine Alert

The Government argues that the narcotics detection dog's positive alert to Murray's currency in Lopez's possession further supports a substantial connection between the currency and illegal drugs. (Doc. 24 at 9). A "positive canine alert for the presence of narcotics on the seized currency" is strong evidence that the currency was "exchanged for or intended to be exchanged for drugs." *$215,300*, 882 F.2d at 419. However, the Ninth Circuit has recognized that virtually all currency is contaminated to a degree with drug residue and that a positive dog alert supports a conclusion of substantial

connection to drug trafficking only when the alert is combined "with other credible evidence clearly connecting the money to drugs." *United States v. U.S. Currency, $30,060.00*, 39 F.3d 1039, 1043 (9th Cir. 1994). Significantly, the narcotics detection dog alerted only to the $14,000 of currency in Lopez's possession and not to the $40,000 in Murray's possession; this undermines the Government's argument that there is substantial connection to drug trafficking.

### 5.     Prior Drug Conviction

Murray argues that his prior conviction for possession of cocaine with intent to distribute is inadmissible under Federal Rule of Evidence ("FRE") 404(b), which prohibits using evidence of a crime to prove character and show that on a particular occasion a person acted in conformity with his character. But FRE 404 permits evidence of a criminal conviction to be used for other purposes, such as "proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Murray's prior conviction is admissible not to show that *Murray* acted as a possessor of cocaine with intent to distribute, but to show that *the currency* was substantially connected to drug trafficking.

The Ninth Circuit Court of Appeals has repeatedly found prior drug convictions to be admissible for the purpose of determining if seized property was substantially connected with illegal drug activity. *See $22,474*, 246 F.3d at 1217; *United States v. U.S. Currency $83,310.78*, 851 F.2d 1231, 1236 (9th Cir. 1988). The Government's burden remains, however, to prove that Murray has not established a genuine issue of fact as to whether the money was substantially connected to drug trafficking. Murray's prior conviction is evidence that will have to be weighed, along with the other evidence, in making this factual determination.

### 6.     Drug Photos

Investigators found photos of cocaine on Murray's cell phone, and the Government has attached to its statement of facts photos of Murray's cell phone displaying these photos on its screen. Murray contests the admissibility of the

- 9 -

1  Government's photos. (Doc. 26 at 8). The Government replies that it need not establish
2  the admissibility of evidence it offers in support of its motion for summary judgment.
3  (Doc. 27 at 8). The Government is incorrect. Although evidence offered in opposition to
4  a motion for summary judgment need not be in an admissible form, evidence offered in
5  support of a motion must be admissible. *See Canada v. Blain's Helicopters, Inc.*, 831
6  F.2d 920, 925 (9th Cir. 1987) ("It is well settled that unauthenticated documents cannot
7  be considered on a motion for summary judgment.").

8  The photos in the Government's Exhibit 15 are inadmissible because the
9  Government has not authenticated them. *See* Fed. R. Evid. 901(a) ("To satisfy the
10 requirement of authenticating or identifying an item of evidence, the proponent must
11 produce evidence sufficient to support a finding that the item is what the proponent
12 claims it is."); *see also People of Territory of Guam v. Ojeda*, 758 F.2d 403, 408 (9th Cir.
13 1985).

14 However, because Murray admitted in his answer to the Government's complaint
15 that investigators examined the contents of Murray's phone and located "a photo which
16 investigators, based on their training and experience, identified as a photograph of a
17 kilogram of cocaine," (Doc. 13 at 9; Doc. 1 at 11), the Court considers this fact to have
18 been proven. *See Am. Title Ins. Corp. v. Lacelaw Corp.*, 861 F.2d 224, 226 (9th Cir.
19 1988) ("Judicial admissions are formal admissions in the pleadings which have the effect
20 of withdrawing a fact from issue and dispensing wholly with the need for proof of the
21 fact." (citation omitted)).

22 The existence of a photograph showing a kilogram of cocaine on Murray's cell
23 phone at the time the currency was seized is probative evidence that weighs in favor of
24 the money having a substantial connection to drug trafficking; however, in light of a
25 genuine issue of fact as to the source of the currency, the Court cannot grant summary
26 judgment in favor of the Government.

27 **IV.  Conclusion**
28 There is a genuine issue of material fact as to whether there exists a substantial

connection between the seized currency and drug trafficking. Murray alleges that he saved the money through his earnings at his self-employed construction business, and the Government offers no evidence that Murray's testimony is inaccurate. Instead, the Government attempts to draw inferences from the undisputed facts that Murray was involved in drug trafficking. Because at the summary judgment stage, all facts and inferences are to be viewed in the light most favorable to Murray, the Government is not entitled to summary judgment.

For the foregoing reasons,

**IT IS ORDERED** denying the Government's Motion for Summary Judgment (Doc. 24).

Dated this 25th day of March, 2014.

James A. Teilborg
Senior United States District Judge